BERKSHIRE LIFE INSURANCE COMPANY, Appellant, *v.* IRVING E. WEINIG et al., Respondents.

Argued January 4, 1943; decided March 4, 1943.

*Hartwell Cabell* for appellant.

*Sidney J. Loeb* for respondents.

RIPPEY, J. In reliance upon the truth of statements and representations by defendant Irving E. Weinig contained in an application, dated May 14, 1931, to plaintiff for a life insurance policy with double indemnity and disability benefit provisions, the plaintiff issued and delivered to said Weinig its policy, dated May 28, 1931, of insurance on his life for the face amount of $10,000, payable to his son, Sheldon Weinig, in the event that insured should die before May 28, 1978, otherwise payable to assured or to his estate, with a rider attached to and made a part of the policy providing for certain total and permanent disability and double indemnity benefits in certain eventualities named therein. The policy proper and attached rider was delivered to Weinig in consideration of a premium of $291.20 for the life policy, a premium of $48 for the disability benefits and a premium of $12.50 for the double indemnity protection. It was agreed that such premiums would be paid annually thereafter by the assured provided, however, that in the event of the total disability of the assured, thereafter plaintiff would waive the payment of all premiums by the assured during the continuance of such disability.

Upon the application for the insurance, Weinig underwent a medical examination. In answer to one of the questions by the medical examiner, the assured stated and represented that neither of his parents nor any of their brothers or sisters nor any of his brothers or sisters had died of or been afflicted with tuberculosis, insanity or any hereditary disease. It has been found by the lower courts that one of the brothers of the assured had received treatment for a mental disorder or insanity in mental institutions to the knowledge of the assured prior to the signing of the application in which such representation was made and that the statement and representation of the assured to the contrary were false. Plaintiff asserts and it also has been found that it had no notice or knowledge of the falsity of the statement and representation at the time the application was made and the policy issued and that it was misled thereby.

In December, 1932, while the policy and supplementary disability rider were in force, the assured became, and has since

continued to be, permanently and totally disabled within the purview of the provisions of the policy and rider from a stomach disorder diagnosed as ulcerative colitis and has been prevented from performing any work or engaging in any occupation for compensation or for profit. On January 24, 1933, the assured filed a claim with the plaintiff for disability benefits and for the waiver of future payments of premiums under the provisions of the supplementary disability rider, which claim was duly approved by plaintiff. The latter thereafter paid to the assured monthly disability benefits of $100 each to and through February 26, 1941, and waived payment of all premiums thereafter due to and including May, 1940. It has been found as a fact upon sufficient supporting evidence that, in giving notice of the claim and in filing papers respecting the same, the assured did not defraud, deceive or mislead the plaintiff into approving the claim or in making monthly disability payments or in waiving the payment of premiums under the policy or supplementary disability agreement attached thereto.

This action was commenced on February 27, 1941, within six years after plaintiff first became aware of the untruth and falsity of the statement of the assured in the application, for judgment canceling the disability agreement on the ground that it was null and void for fraud from its inception, requiring the assured to return to plaintiff all payments made as disability benefits, with interest, and adjudging the policy in its entirety terminated for nonpayment of premiums. It has been held that the incontestability provision in the policy bars such relief. We assume, for the purposes of this decision, that the finding of the trial court that the representation by Weinig above referred to was material to the risk was sustained by the evidence. Accordingly, its falsity would enable plaintiff successfully to maintain this action (*Jenkins* v. *John Hancock Mut. Life Ins. Co.*, 257 N. Y. 289) unless suit is barred by the two year incontestability clause in the policy proper or by laches.

The life policy proper contained the provision that " This policy will be incontestable after it has been in force during the lifetime of the insured for a period of two years from the date of its issue, except for non-payment of premiums; provided, however, that any provisions or conditions relating to

benefits in event of total and permanent disability or accidental death contained in any supplementary agreement attached hereto shall become void for the causes and under the conditions stated therein." The policy and supplementary agreement were in full force and in good standing with all required premiums fully paid more than two years after the date of issue thereof. No grounds are stated in the policy proper by which liability under the supplementary agreement may be contestable after the period of two years after date of issue except the nonpayment of premiums. During disability, payment of premiums was agreed to be waived as above stated. The only " causes " and " conditions " stated in the supplementary agreement for and under which the " provisions or conditions relating to benefits in event of total and permanent disability * * * shall become void " are: (1) failure of the insured to furnish proof of the continuance of the disability and to permit examinations by the company's duly appointed medical examiner at such time or times as may be required by the company during the first two years after the receipt of proof of the disability; (2) recovery of the insured from his disability; (3) in the event the disability results " from causes arising during military or naval service in time of war, or from self-inflicted injury, or from participation in underground work, or in aerial or submarine expeditions or operations, either as a passenger or otherwise." None of those " causes " and " conditions " have any applicability under the facts in this case. It thus appears that fraud in the inception of the contract is not stated to be one of the " causes " or " conditions " for or under which the supplementary agreement shall become void. There is no reservation in the policy proper or in the so-called supplementary agreement of fraud in the inception of the contract as a ground for declaring the contract void if asserted more than two years after the date of issue of the policy. It is significant that the plaintiff stated at length and in detail the " causes " and " conditions " under which the supplementary agreement should become void. Had it been the intent of the plaintiff to except fraud in the inception of the contract from the operation of the two-year incontestability clause, it would have been a simple matter to have inserted a provision to that effect which it had the power to

do; if there is any ambiguity in the meaning of the provisions of the contract, all doubt must be resolved in favor of the insured (*Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Stroehmann* v. *Mutual Life Ins. Co.*, 300 U. S. 435, 439).

Not only do settled principles of construction require that the application for insurance, the policy proper and the supplemental rider must be read together and construed as a single instrument, but a reading of those instruments so indicates in unmistakable language. The incontestability clause applies to the policy as a whole. " It is not a stipulation absolute to waive all defenses and to condone fraud. On the contrary, it recognizes fraud and all other defenses but it provides ample time and opportunity within which they may be, but beyond which they may not be, established. It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds" (*Wright* v. *Mutual Benefit Life Assn.*, 118 N. Y. 237, 243). It " is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken" (*Matter of Metropolitan Life Ins. Co.* v. *Conway*, 252 N. Y. 449, 452). It is directed against a claim that the contract has been obtained by fraudulent misrepresentations or that there is a breach of a condition precedent or subsequent and absolutely bars rescission after the period within which liability may be contested (*Columbian Nat. Life Ins. Co.* v. *Hirsch*, 267 N. Y. 605; *Killlian* v. *Metropolitan Life Ins. Co.*, 251 N. Y. 44, 49).

What Weinig bought, and what he had a right to understand that he bought, was a policy of life insurance with provisions for disability and double indemnity benefits, incontestable for any cause whatsoever after two years from the date of issue of the policy except for those reasons which were specifically stated and enumerated in the supplemental rider attached to and made a part of the policy.

The judgment appealed from should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.