## Richmond

SOUTHLAND LIFE INSURANCE COMPANY v. INEZ A. DONATI.

June 13, 1960.

Record No. 5086.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*William T. Prince* and *Lawson Worrell, Jr.* (*Williams, Cocke, Worrell & Kelly*, on brief), for the plaintiff in error.

*James M. Pickrell* (*Kellam & Kellam*, on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

Action was instituted against Southland Life Insurance Company by Inez A. Donati, beneficiary in an insurance policy issued upon the life of David C. Donati, her husband. In its grounds of defense Southland admitted issuance of the policy sued upon and death of insured, but asserted that the policy was not in force or effect

because insured obtained its issuance by fraud. It is stated in the grounds of defense that (a) he obtained the policy by "making knowingly false and fraudulent answers" to questions contained in his written application and that the policy would not have been issued had the questions been answered truthfully, and (b) that insured was not in good health at the time of the execution of the written application or when the policy was issued and delivered to him, and that good health was "a condition precedent to the policy becoming in force."

Inez A. Donati denied the charge of fraud in the procurement of the policy and asserted that the company was estopped to claim that the policy was not in force and effect because a copy of the written application containing the statements upon which it relied had not been attached to the policy and made a part thereof as required by § 38.1-393, Code 1950. She also moved for summary judgment against the company. After hearing argument, the court concluded that the company was estopped to assert the defense of fraud in the procurement of the policy, and there being no material fact in dispute, summary judgment was entered in favor of plaintiff for the sum of $12,100, with interest from September 11, 1958.

The policy does not have a copy of the written application attached thereto, nor was the application filed or made a part of the record, but the litigants concede that the statements and misrepresentations, if any, were contained in the application signed by insured.

Section 38.1-393, Code 1950, relied upon by Inez A. Donati, follows:

"In each such policy there shall be a provision that the policy, or the policy and the application therefor if a copy of the application is endorsed upon or attached to the policy when issued, shall constitute the entire contract between the parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement or statements shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be endorsed upon or attached to the policy when issued."

The sole question presented is one of law, i.e., whether or not the defense made by the company of fraud in the procurement of the policy is available to it when it omitted to endorse upon or attach

to the policy when issued a copy of the statement or statements contained in the application made by insured and relied upon by it to establish the alleged fraud.

The company insists that the requirements and limitations imposed in § 38.1-393 upon the use of insured's statements in defense of a claim under the policy are qualified by the phrase, "in the absence of fraud," and that the subsequent phrase, "that no such statement or statements shall be used in defense," is applicable only "in the absence of fraud" and does not forbid proof of fraudulent statements made to induce the contract—fraud in the procurement—contained in an application that is not endorsed upon or attached to the policy.

We are reminded by Inez A. Donati that the statute is remedial, enacted for the benefit of the insured, and should be liberally construed to effect its evident purposes, which are to declare what shall constitute the contract between the insurer and insured and eliminate defenses available to the insurer unless the statements relied upon are made in the manner and incorporated into the contract in the mode prescribed. She then argues that when the character and purpose of the statute are kept in mind, it is evident that the phrase, "in the absence of fraud," refers to and qualifies only that part of the statute which declares that all statements of insured shall be deemed representations and not warranties, and that the subsequent phrase, "no such statement or statements shall be used," is clearly intended to forbid and is sufficient to preclude the use of statements in the application as a defense unless endorsed upon or attached to the policy.

Section 38.1-393 has not been applied or construed in any decisions of this court. In *Gilley* v. *Union Life Insurance Co.*, 194 Va. 966, 76 S. E. 2d 165, the allegedly fraudulent statements were made by the beneficiary and not by the insured, and thus this section which applies only to statements of the insured was inapplicable.

It is apparent from the cases reported and discussed in 93 A. L. R. 374 that there is conflict in the decisions that construe and apply similar or like statutes. This conflict is also commented upon in 29 Am. Jur., Insurance, § 173, p. 192, and 44 C. J. S., Insurance, § 258 (b), p. 1043.

An examination of decisions on this subject discloses that some of the statutes provide that no representations or warranties made by insured shall be used as a defense to the policy unless contained in a written application while some provide that no statements con-

tained in an application shall be used in defense against the policy unless attached to the policy. It should, however, be observed that the Virginia act goes further and is more stringent, for § 38.1-390 provides that no policy of the character here sued on "shall be delivered or issued for delivery in this state unless it contain in substance all of the provisions prescribed in" § 38.1-393. Then, in turn, § 38.1-393 not only requires that the statements be contained in a written application, but also forbids use of the statements in defense of a claim under the policy unless endorsed upon or attached to it. The provisions of these two interlocking sections are definitely indicative of an intent to restrict the insurer in the use of statements made by the insured in defense of a claim under the policy unless they be incorporated into the contract in the mode prescribed.

Statutes strikingly similar to § 38.1-393 are found in several of the states, *i.e.,* Michigan, Louisiana, Minnesota, Tennessee, and in the decisions of the courts of those states construing and applying their statutes, it has been held that unless the application is endorsed upon or attached to the policy, the defense of fraud is not available to the company and cannot be used to defeat recovery under the policy.

In *New York Life Insurance Co.* v. *Hamburger,* 174 Mich. 254, 140 N. W. 510, the Michigan statute provided that every policy issued or delivered within the state by a life insurance corporation shall contain the entire contract and nothing incorporated therein by reference unless the same be endorsed upon or attached to the policy when issued. It also declared that no policy of life insurance shall be issued unless it contains "Fourth, a provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued."

In construing and applying this section, the court said at page 257:

"* * * A careful study of the language of the section convinces us that innocent misstatements or omissions to answer on the part of the applicant shall be held to be simply representations; but, in case that fraud can be shown, they shall be held to be warranties. In no case, however, shall the policy be subject to attack unless such statement claimed to be fraudulent is contained in the written application indorsed upon or attached to the policy when issued. It

undoubtedly seemed fair to the legislature that the policy holder should have in his possession, during his lifetime, such statements or representations which might be claimed, after his death, to have been fraudulent, so that he might know, or could be held to know what the contract was which he had entered into."

A statute quite similar to that now before us was construed and applied in *Fisette* v. *Mutual Life Ins. Co. of N. Y.*, 162 La. 620, 110 So. 880. The Louisiana statute provided that every policy issued or delivered by a life insurance company should contain the entire contract, and nothing contained in an application should be incorporated therein unless endorsed upon or attached to the policy when issued, "and all statements purporting to be made by the insured shall in the absence of fraud be deemed representations and not warranties, and no statement or statements not endorsed upon or attached to the policy when issued shall be used in defense of a claim under the policy unless contained in a written application and unless a copy of such statement or statements be indorsed upon or attached to the policy when issued.* * *" (At page 623)

The defense interposed by the company was fraud in the procurement because of fraud in the application. The court rejected that defense because the application was not attached and said:

"* * * The purpose of the law is that the insured shall have in his possession during his lifetime, and that the beneficiary shall have after the death of the insured, the entire evidence of the contract. It would not serve that purpose, but would violate the spirit, if not the very letter, of the law, if the statute should be so construed that a statement made by the insured in an application for 'establishing' or 'placing in force' a policy that was not theretofore placed in force by the payment of the first premium need not be indorsed upon or attached to, the policy to form a part of the contract. * * *" (At page 626)

The statute under which the company defended in *Wheelock* v. *Home Life Ins. Co.*, 115 Minn. 177, 131 N. W. 1081, contained the following provision, which was also contained in the policy as required by statute:

" 'All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement shall avoid this policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to the policy when issued.' " (At page 180)

Though the application was not endorsed upon or attached to the policy, yet the company contended that this provision did not preclude it from proving fraud in the procurement, but the court, in refusing to admit the statement, said:

"We cannot agree with this construction. If it is adopted, the requirement that the application be indorsed on or attached to the policy is of little value. We think the true construction of the language of the statute is that, in the absence of fraud, statements made by the insured are deemed representations, not warranties, but that statements, whether fraudulently made or not, will not avoid the policy, unless they are contained in a written application, and unless a copy of such application is indorsed upon or attached to the policy. The use of the word 'such' is not especially significant. The law says: 'All statements made by the insured shall, in the absence of fraud, be deemed representations.' The word 'such' refers, we think, to 'all statements made by the insured.' * * *" (At page 180)

The Tennessee statutes construed in *Arnold* v. *N.Y. Life Ins. Co.*, 131 Tenn. 720, 177 S. W. 78, required that every policy of insurance (except certain stated classes) issued to any citizen of the state contain the entire contract and that each policy of life insurance issued in the state contain a provision " "* * * that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be indorsed upon or attached to the policy when issued.' " (At page 724)

The questions propounded to insured in the application were whether or not he had heart disease, stomach trouble, or kidney trouble, to which he answered "No", but the evidence disclosed that he did have these diseases and died as a result thereof. Neither the application nor a copy thereof was attached or incorporated into the policy. In view of that fact the court said that the company could not rely upon the statements contained in the application or take advantage of the breach of any of its terms.

The Supreme Court of Iowa construed the Minnesota statute in *Rauen* v. *Prudential Insurance Co.*, 129 Iowa 725, 732, 734, 106 N. W. 198, and in doing so made these observations:

"* * * If we say that the company may disregard this statute and have the right to assert and rely upon such application as a part of the issue its policy without attaching a copy of the application, and still

contract, the legislative enactment is reduced to a mere idle form of words, having not the least effect upon the rights of parties as they existed before it was passed. * * *

\*     \*     \*     \*     \*     \*     \*

"It may be admitted, for the purposes of this case, that the fraud pleaded was sufficient to avoid the policy if the appellant had put itself in position to make use of the defense; but, failing to attach a copy of the application to the policy, it waived its right to take issue upon the application or any part of it. * * *"

We think these decisions represent the better view, for they make effective the intent and purpose of the legislation that they construe and apply. The statute before us, remedial in nature, is couched in imperative and vigorous language. It should not be frittered away by nice distinctions but should be construed so as to accord substance to its terms and make effective its purpose.

The judgment is affirmed.

*Affirmed.*